UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LUIS ARLEN RUIZ MEJIA,

Petitioner,

v.

CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,

Respondents.

Case No.: 3:26-cv-05632-RBM-GC

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

**[Docs. 4, 11]**

Pending before the Court is Petitioner Luis Arlen Ruiz Mejia's ("Petitioner") Amended Petition for Writ of Habeas Corpus ("Amended Petition") pursuant to 28 U.S.C. § 2241. (Doc. 11.) For the reasons below, the Court **GRANTS** the Amended Petition.

## I. BACKGROUND

Petitioner is a citizen of Nicaragua who entered the United States in 2003.[1] (*Id.* at 2.) On July 29, 2004, Petitioner was ordered removed to Nicaragua in absentia. (*Id.*) The

[1] The Parties disagree regarding the circumstances under which Petitioner entered the United States. Petitioner attests in a sworn declaration that he "was held in detention for 42 weeks and then paroled into the U.S." upon receiving "a Notice to Appear with a court date on it." (Doc. 11-1 [Decl. of Luis Arlen Ruiz Mejia] ¶ 2.) Respondents represent in their Return that he entered without inspection "by wading the Rio Grande River." (Doc. 12 at 1–2.) The distinction does not matter for purposes of ruling on the Amended Petition; therefore, the Court need not set an evidentiary hearing.

Parties agree that the removal order became administratively final on that day. *See* 8 C.F.R. § 1241.1(e) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final . . . [i]f an immigration judge orders [a noncitizen] removed in the [noncitizen's] absence, immediately upon entry of such order . . . .").

Petitioner lived in the United States for over 20 years after being ordered removed in absentia. On June 29, 2026, "as he was leaving a restaurant with his family, [Petitioner] was arrested by ICE officers." (Doc. 11 at 2.) After being detained, Petitioner moved to reopen his removal proceedings. (*Id.*; Doc. 12 at 2.) On August 8, 2026, the immigration judge denied Petitioner's motion to reopen. (Doc. 12-1 at 2.) The Parties agree that Petitioner is detained under 8 U.S.C. § 1231(a), and that he has been detained for about 120 days.

Petitioner, then proceeding *pro se*, filed his original petition on September 30, 2026. (Doc. 1.) The Court granted Petitioner's motion to proceed *in forma pauperis* and to appoint counsel. (Doc. 6.) Petitioner, now represented by Federal Defenders, filed the operative Amended Petition on October 16, 2026. (Doc. 11.) Respondents filed their Return on October 23, 2026. (Doc. 12.) Petitioner filed his Reply on October 26, 2026. (Doc. 13.)

## II. <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

# III. DISCUSSION

Petitioner argues that his detention violates the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not significantly likely in the reasonably foreseeable future. (Doc. 11 at 3–8.) Petitioner also argues that his warrantless arrest violates 8 U.S.C. § 1357(a). (*Id.* at 8–11.) Respondents argue that the Petition "is premature as the six-month presumptively reasonable removal period will not end until December 29, 2026" because "Petitioner was only recently located and detained to effectuate the final removal order on June 29, 2026." (Doc. 12 at 2–3.) Respondents indicate that they "intend to effectuate" Petitioner's removal order, but otherwise do not respond to the merits of the *Zadvydas* claim. (*See id.*)

## A. *Zadvydas*

The Supreme Court has recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final. *Zadvydas*, 533 U.S. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* (citation modified). In that case, the noncitizen's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

### 1. Presumption of Reasonableness

The six-month presumptively reasonable period has passed for Petitioner. "The removal period begins when [a noncitizen] is ordered removed, and the removal order becomes administratively final." *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021) (citation modified). Under § 1231:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process, the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

The Parties agree that only the first option is relevant here, and that Petitioner's removal order became final on July 29, 2004. (*See* Doc. 12 at 2.) Respondents argue that the presumptively reasonable six-month period begins not after the removal order becomes final, but after the petitioner has been detained. (*See id.* at 2–3.) But as multiple courts have concluded, § 1231 "is unequivocal that the removal period begins on the . . . day that Petitioner's order of removal bec[omes] administratively final." *Nguyen v. Mullin*, Case No.: 26-CV-2815-JAO (JLB), 2026 WL 1480803, at *2 (S.D. Cal. May 26, 2026) ("Respondents failed to cite any authority to support their position that the presumptively reasonable period of detention only applies when the individual is actually in detention, i.e., that the nearly seven-year period in which Petitioner was on supervision is not relevant to the *Zadvydas* argument."); *see also Nguyen v. Noem*, Civil Action No. 5:25-CV-176, 2026 WL 237282, at *7 (S.D. Tex. Jan. 28, 2026) ("[T]here is nothing in the relevant statutory language to suggest that the removal period restarts or resets automatically with another arrest or subsequent redetention."); *Osson v. LaRose*, Case No.: 3:26-cv-4834-JES-JLB, 2026 WL 3034514, at *3 (S.D. Cal. Oct. 9, 2026) ("The Ninth Circuit has also characterized the six-month grace period as tied to the start of the removal period, not the date of detention.") (citing *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1100 n.5 (9th Cir. 2001)).

The Court agrees with the reasoning in the above cases and incorporates it here. Therefore, under § 1231 and *Zadvydas*, Petitioner's detention would have been presumptively constitutional for six months after July 29, 2004, through January 29, 2005. Because Petitioner's removal order became administratively final over 20 years ago, though, his current detention is not presumptively reasonable.

**2. Good Reason to Believe**

After the six-month period expires, Petitioner has the initial burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up). Respondents do not dispute Petitioner's contention that they have made no progress in removing him despite his removal order being finalized over 20 years ago. Accordingly, the Court finds that Petitioner has met his initial burden. The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As discussed below, Respondents have not done so.

**3. Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Respondents do not respond substantively to Petitioner's *Zadvydas* argument. They attach no declarations or documentary evidence regarding progress being made toward Petitioner's removal. They indicate only that they "intend to effectuate" Petitioner's removal to Nicaragua. (Doc. 12 at 2.) Furthermore, Petitioner attests that "no officer has come and talked to [him] . . . about travel documents, or any travel plans." (Mejia Decl. ¶ 7.) Courts in this District, including this Court, have found that the Government failed to meet its burden on facts more favorable to them than those present here. *See, e.g.*, *Phan v. Warden of Otay Mesa Det. Facility*, 813 F. Supp. 3d 1179, 1186–87 (S.D. Cal. 2025) (holding that the Government failed to sufficiently rebut even though it had already submitted a travel document request to ICE headquarters because it "conceded that the travel document request had yet to be submitted to Vietnam, provided no estimate for when it would be submitted, and provided no estimate for how long it would take for Vietnam to respond") (citation modified); *Conchas-Valdez v. Casey*, No. 25-cv-02469-DMS-JLB, 2025 WL 2884822, at *3 (S.D. Cal. Oct. 6, 2025) ("[T]he Government's minimal work on this case—one resettlement request and two follow up emails over the course of seven

months—do not instill confidence that it will be able to secure [the petitioner's] removal in the reasonably foreseeable future."); *Osson*, 2026 WL 3034514, at *4 (holding that the Government had failed to sufficiently rebut where it represented it was "working expeditiously" to facilitate Petitioner's removal but had not yet submitted a travel document request).

Petitioner has sufficiently established that his removal is not significantly likely in the reasonably foreseeable future. Therefore, his detention is no longer reasonable or authorized by statute.

## IV. CONCLUSION[2]

For the foregoing reasons, the Amended Petition (Doc. 11) is **GRANTED**. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to "appropriate conditions" of supervision to be determined by immigration authorities and in accordance with applicable statutory and regulatory procedures. *See Zadvydas*, 533 U.S. at 700; *Vlasov v. Bondi*, Case No.: 25-cv-1342-AJB-MSB, 2025 WL 2258582, at *3 (S.D. Cal. Aug. 7, 2025).

The Motion for Temporary Restraining Order (Doc. 4) is **DENIED as moot**.

**IT IS SO ORDERED**.

DATE: October 27, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

[2] In light of its conclusion above, the Court does not reach Petitioner's warrantless arrest argument.